ORIGINAL

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUN 15 P 3: 10

TIMOTHY RUGGLES,

        Plaintiff,

vs.

CIVIL NO.: 04-CV-72117-DT **FILED**

COMMISSIONER OF
SOCIAL SECURITY,

HON. ROBERT H. CLELAND
MAG. JUDGE WALLACE CAPEL, JR.

        Defendant.

_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

    It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part,

deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent

with this Report.

**II.**    **REPORT**

    This is an action for judicial review of the Defendant Commissioner's final decision denying

Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits on August

14, 2001, due to back problems, alleging disability since April 3, 2001. (TR 47-49, 54). Benefits

were denied initially on January 10, 2002. (TR 35-40). A de novo hearing was held on February 4,

2003, before Administrative Law Judge [ALJ] Alfred H. Varga. (TR 190-222). In a decision dated

May 29, 2003, the ALJ found that Plaintiff could perform a significant range of sedentary work. (TR

21-29). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the

1

Commissioner's final decision when the Appeals Council denied review on April 16, 2004. (TR 9-12). The Plaintiff commenced this action for judicial review.

### A.   PLAINTIFF'S TESTIMONY

Plaintiff testified that he was forty-four at the time of the hearing and completed high school. (TR 194). He indicated that he did not pursue any further education. Id. He stated that he is not currently working and last worked on April 3, 2001. Id. Plaintiff explained that he stopped working on that date due to a truck and automobile accident. Id.

He testified that he was last working as a septic truck driver cleaning out port-o-johns. (TR 195). He stated that he had been at that particular job for sixth months prior to the accident. Id. He stated that he alternated evenly throughout the day between sitting and standing. Id. He stated that he lifted over one hundred pound port-o-johns by himself throughout the day. Id.

Prior to the aforementioned employment, Plaintiff stated that he worked on his father's farm, baling hay, driving combines and tractors, and caring for beef cattle. (TR 195-96). He stated that he lifted fifty-five to sixty pound bales of hay. (TR 196). He stated that he also worked as a floor cleaner and painter after his parents sold the farm. Id. He explained that he worked at Kroger's for about three years stripping the wax floors. Id. He stated that he would lift two hundred pound propane buffers at Kroger's with the help of another person. (TR 197). He stated that he only painted for about five months. Id. He stated that he has not worked since his accident because he has been in the hospital, underwent surgeries, and then rehabilitation. Id. After the accident, Plaintiff stated that he initially stayed in the hospital for eight or nine hours. (TR 197, 199).

He explained that he injured his lumbar spine and subsequently has three metal plates and some titanium screwed together in his back in January 2002. (TR 197-98, 199). Between April 2001

2

and January 2002, he testified that he was in therapy for six weeks without relief[1] and had an MRI May 31, 2001. (TR 199-200, 202). He reported that they told him that he needed surgery after the MRI, but they could not get him in for another seven months. (TR 200). During this time, he stated that he could not bend over or do anything due to constant pain. Id. He also explained that the doctors told him that if he did anything during this time that he may never walk again. (TR 203). He described that pain as severe and stated that it kept him from sleeping as well as staying in one position for more than one hour. (TR 200-01). He testified that he was also unable to perform daily functions due to the pain. (TR 201).

He stated that he had the surgery six months after the MRI and a bone was removed from his hip and fused into his back by Dr. Rapp.[2] (TR 198, 203). He explained that he was in the hospital for seven or eight days after the surgery. (TR 198). He stated that he was last in the hospital in January of 2003 to determine whether the titanium needs to come out of his back. Id. He testified that between January 2001 and 2003, he was not in the hospital; rather, he was receiving rehabilitation services. Id. He explained that he was not supposed to do anything for six months after his surgery and his rehabilitation consisted of cold compresses on his back, walking on the treadmill, and other exercises twice a week. (TR 198, 203). He indicated that the therapy was two days a week initially, and recently it was increased to three days as well as attending the YMCA two days a week. (TR 198-99, 204, 206). He stated that he has a therapist that works with him at the YMCA where they are having him workout in the pool and do other exercises. (TR 205).

---

[1]He explained that his condition actually worsened during the six weeks. (TR 202).

[2]Plaintiff indicated that Dr. Rapp is his treating physician. (TR 215). He stated that the doctor has not put any restrictions on him; rather, he stated "he pretty much puts that into the therapy's [sic] hands." Id.

3

Plaintiff testified that if he sat in the chair at the hearing for one hour, he would be in pain. (TR 201). He then stated that he thinks he can sit a half hour at a time "at the most." Id. He stated that he does not usually stand for more than fifteen minutes at a time and he can only walk short distances. Id. He explained that in therapy they are trying to increase the distances he walks and using hot tub therapy as well. Id. Currently, he stated that they have him walk for fifteen minutes in therapy on a treadmill, but he was unsure of the distance. (TR 201-02). He stated he is only lifting ten pounds in therapy, per the therapist's limitations. (TR 202).

Plaintiff testified that his condition is not getting better. (TR 206). He stated that he went in a week prior to the hearing to have an operation. Id. He explained that "[t]hey put needles in [his] back that go down to their [sic] six screws on them [sic] plates." (TR 206, 209). He explained that they are trying to determine whether the titanium needs to be removed. (TR 206-07, 208).

He stated that he still suffers with severe pain. (TR 207). He reported that he is up three or four times a night and cannot sleep. Id. He stated that riding too long in the car or sitting too long causes his pain to increase. (TR 207-08). At the hearing, Plaintiff stated that he was in pain, but that he was taking pain medication, which helped. (TR 209). He stated that his pain was a six or a seven, with ten being the most severe pain. Id. He explained that his pain is usually at a seven, even with his pain medications, which include morphine, Lortab, and methadone. Id. He stated that he does not have any side-effects. Id. He stated that the damp and cold weather cause his pain to increase in severity. (TR 210).

Plaintiff testified that he can drive, but he does not "drive much." Id. He stated that he does not do anything around the house. Id. He stated that worker's compensation pays his wife to do the cleaning and cooking. Id. He indicated that he received two hundred and eighty-one dollars a week

4

from worker's compensation.  Id.  Plaintiff testified that he has not filed for, nor received unemployment compensation, nor has he received any long-term disability benefits.  (TR 211).

On a typical day, Plaintiff stated that he gets up around nine in the morning.  Id.  He reiterated that he is up and down all night.  Id.  He stated that he goes from his bed to his couch.  Id.  He stated that he then goes to the YMCA or therapy.  (TR 212).  He stated that he stays at the YMCA for two to three hours, spending about fifteen minutes on the treadmill and at least an hour in the pool.  Id.  He stated that he spends about an hour in the jacuzzi then goes in the shallow end of the pool for a little while.  (TR 213).  He stated that he goes home for lunch or stops to get something to eat.  Id.  He stated that he does his banking on Thursdays.  Id.  He stated that while he is at home, he sits and watches television or lies down.  (TR 214).  He stated that he gets into his bathtub a lot at home to relieve his back pain.  Id.

The vocational expert [VE] questioned Plaintiff regarding his previous work experience.  (TR 216-17).  Plaintiff indicated that he lifted five gallon buckets of paint as a painter, but nothing heavier.  (TR 216).  He stated that he painted trusses in a factory at an unloading bay.  Id.  Plaintiff indicated that he owned the floor service operation business and employed three or four other people.  (TR 216-17).  He stated that he handled the company books, but did not use a computer.  (TR 217).

### B.   MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive.  The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[3]

_____

[3]See Subpart E, supra.

5

## C.   VE'S TESTIMONY

VE Raymond Dulecki, testified at the hearing. (TR 217-220). He stated that Plaintiff's past work as a port-o-john truck driver was heavy and semiskilled; as a painter, medium and semiskilled; as a floor cleaner owner, medium and the upper level of semi-skilled; and as a farmer, heavy and skilled. (TR 218). The ALJ asked about transferable skills and the VE indicated that he would only attempt to transfer Plaintiff's driving skills to light driving jobs. Id. The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, sex, education, work experience, and transferable skills. (TR 218). The ALJ further asked the VE to assume that Plaintiff's testimony was accurate. (TR 219). The VE stated that such a claimant could not go back to Plaintiff's past relevant work, nor could he do any other work. Id. The VE explained that testimony regarding severe pain, ongoing therapy, rehabilitation, and the twenty minute position would be work preclusive. Id. The VE added that the restrictions on sitting, standing, walking, lifting, and bending were also limiting factors. Id.

The ALJ posed a second hypothetical to the VE in which a claimant with Plaintiff's age, sex, education, and work experience assuming Plaintiff

> became well enough to perform a sedentary job, and sedentary jobs are jobs that require a person lift a maximum of 10 pounds with lesser weights on a regular basis. Jobs that would afford the option of sitting or standing off and on, where there would be very limited bending, stooping, twisting or turning, and jobs that would be performed indoors where there would be no extremes - - certainly no cold to aggravate his back condition.

Id. The ALJ asked whether there were any jobs such a claimant would be capable of performing. Id. The VE stated that such a claimant could perform unskilled work. (TR 220). The VE identified the following positions:  inspection, packaging, and assembly in the industrial setting, 6,500

6

positions; as well as service and clerical,[4] 2,500 positions. Id. The VE stated that these positions were unskilled and entry-level. Id. He testified that "[t]hese would be learned primarily on the basis of a short demonstration period only." Id. The VE stated that the jobs were consistent with the Dictionary of Occupational Titles, with the exception of the sit-stand option which the VE indicated he both observed and placed people in such positions. Id.

## D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that claimant has "degenerative disc disease of the lumbar spine and status post lumbar laminectomy and fusion." (TR 23). However, the ALJ found that he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. (TR 23, 28). The ALJ found Plaintiff fairly credible. (TR 28). Thus, he determined that Plaintiff had the residual functional capacity [RFC] to perform the following jobs: "assembler, sorter, packer, inspector, lobby attendant, or security monitor." (TR 27, 28). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 27-29).

## E. ANALYSIS

Plaintiff advances several claims in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) additional evidence not considered by the ALJ substantiates Plaintiff's disability; and (2) the ALJ improperly

---

[4]The VE gave lobby attendant and security monitor as examples. (TR 220).

7

relied on his second hypothetical.[5]   In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[6]   The matter is now ready for decision.

### 1.   **Standard of Review**

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).  Applying these standards, I will analyze each of Plaintiff's claims.

---

[5]Plaintiff's Motion for Summary Judgment and Brief filed September 9, 2004 (hereinafter "Plaintiff's Brief"), at pages 8-13.

[6]Defendant's Motion for Summary Judgment and Brief filed September 28, 2004 (hereinafter "Defendant's Brief"), at pages 6-8.

a.     **Additional Evidence**

Plaintiff alleges that there was additional medical records that were not considered by the ALJ.[7] Plaintiff's Motion must show that the additional evidence is new, good cause for why the proposed new evidence was not timely filed, and how it is material. Cline v. Comm'r. of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Snider v. Comm'r of Soc. Sec., 328 F.Supp.2d 703, 709-10 (E.D. Mich. 2004).

"In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988) (citing Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir.1980)). Cumulative Young v. Sec'y of Health and Human Servs., 925 F.2d 146, 149 (6th Cir. 1990). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam). Plaintiff must establish "newness" pursuant to Finkelstein v. Sullivan, 496 U.S. 617, 626 (1990) (a sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."); Abbott v. Sullivan, 905 F.2d 918, 925 n.5 (6th Cir. 1990).

Plaintiff fails to articulate why any of the aforementioned factors are met. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under

---

[7]Plaintiff's Brief at pages 8-10.

9

Section 405." Sizemore, 865 F.2d at 711 (C.A.6 (Ky.),1988) (quoting Oliver v. Sec'y of Health & Human Serv., 804 F.2d 964, 966 (6th Cir.1986)) (quoting Willis v. Sec'y of Health & Human Serv., 727 F.2d 551, 554 (6th Cir.1984) (per curiam)). Therefore, Plaintiff fails to carry his burden and the additional evidence will not be reviewed further here.[8]

### b.   Improper Hypothetical

Plaintiff alleges that the second hypothetical does not describe him in all significant, relevant aspects under Felisky.[9]   Rather, Plaintiff argues that the first hypothetical was supported by substantial evidence and found that there was no work that Plaintiff would be capable of doing.[10]

In the second hypothetical, the ALJ asked the VE to assume that Plaintiff "became well enough to perform a sedentary job . . ." and then went on to list other limitations on bending, twisting etc. (TR 219). In his decision, the ALJ found that Plaintiff was capable of performing "a significant range of sedentary work." (TR 28). Therefore, the ALJ concluded that Plaintiff was capable of the jobs identified by the VE in response to the hypothetical. The ALJ in Garner v. Heckler, 745 F.2d 383, 389 (6th Cir. 1984), similarly found that "[t]he claimant's impairment is expected to improve following his surgery and he should have residual functional capacity for at least sedentary work." However, in Garner, the Court found that the medical records did not contain substantial evidence to support the ALJ's finding of such an improving condition. Id. at 390.

---

[8]Although Plaintiff was unrepresented at the hearing, Plaintiff's Brief was filed with the benefit of counsel. The Court should not assume the burden placed on Plaintiff and his attorney regarding the additional evidence.

[9]Plaintiff's Brief at pages 10-11.

[10]Plaintiff's Brief at pages 11-12.

2:04-cv-72117-RHC-WC   Doc # 14   Filed 06/15/05   Pg 11 of 15   Pg ID 290

In the present case, on the contrary, the ALJ's finding of an RFC to do sedentary work is
supported by medical evidence, namely Dr. Richter's treatment notes in August and September 2002.
(TR 138-39, 141-42). The ALJ noted that Dr. Richter did state that Plaintiff was trying to walk with
his wife, "which was positive." (TR 25, 138). Dr. Richter's "impression" at this point was
"[c]hronic pain syndrome." (TR 138). One month earlier he stated "[c]hronic back pain, for the
most part improving." (TR 141). Further, in November 2002, Plaintiff's treating physician stated
that Plaintiff "has taken a trip to Mackinaw, and I have encouraged him to participate in recreational
activities."[11] (TR 135). His "impression" was also "[c]hronic back pain syndrome." Id.

Plaintiff points out that the second hypothetical fails to mention Plaintiff's alleged "pain,
surgery, ongoing therapy and rehabilitation, medication effects, and recovery time."[12] However, the
ALJ assumed in this hypothetical that Plaintiff's condition improved, therefore, he assumed that
these conditions would not longer be limiting in contrast to the first hypothetical.

In the first hypothetical, the ALJ asked the VE to assume Plaintiff's testimony, and the VE
responded that Plaintiff's testimony regarding severe pain, ongoing therapy, rehabilitation, and the
twenty minute position which would preclude his work ability. (TR 219). This would not normally
present a problem.[13] However, in this case, the ALJ found that Plaintiff was in fact, "fairly credible."

---

[11]This evidence was available before the ALJ published his decision, however, he fails to
mention it. It is not clear whether this information was part of the "additional evidence" proffered
by Plaintiff. Nevertheless, an ALJ need not mention each and every piece of evidence; however, the
Court mentions it here because it represents substantial evidence in support of the ALJ's finding
regarding Plaintiff's improving condition.

[12]Plaintiff's Brief at page 11.

[13]Where the ALJ finds that a claimant is not fully credible, he or she need not give credence
to portions of a claimant's testimony that are found incredulous. Thus, an ALJ is not bound by a
VE's testimony in regard to a hypothetical which assumes a level of credibility that the (Cont'd....)

Therefore, this Court is unable to properly analyze the ALJ's rejection of the first hypothetical. Further, it also causes the Court confusion regarding the absence of the pain complaints as a limitation in the second hypothetical, if the ALJ indeed found Plaintiff "fairly credible."

"It is more than merely 'helpful' for the ALJ to articulate reasons . . . for *crediting* or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir.1985) (citing Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984)) (emphasis added). As Social Security Ruling [SSR] 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich., August. 3, 2004) (slip copy). In this case, meaningful appellate review is hampered by the ALJ's seemingly inconsistent credibility determination. Therefore, remand is recommended.

### 2.    Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits

---

(....cont'd) ALJ does not him or herself assume. As in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

"only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Here, the ALJ's adverse decision was deprived of substantial evidentiary support because the RFC found in the ALJ's decision is at odds with the VE's testimony as solicited at the February 4, 2003, hearing. Therefore, this case should be remanded to allow the ALJ to state the reasons for finding Plaintiff fairly credible, while at the same time rejecting portions of his testimony, namely his testimony regarding severe pain, ongoing therapy, rehabilitation, and the twenty minute position which would preclude his work ability.

## III.   CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further proceedings consistent with this Report.

## IV.   REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing objections

13

which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: **JUN 1 5 2005**

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

**ORIGINAL**

## CERTIFICATION OF SERVICE

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUN 15  P 3 10

UNITED STATES OF AMERICA )

            ) ss    Case No.: 04-CV-72117–DT

EASTERN DISTRICT OF MICHIGAN   )

**FILED**

     I, the undersigned, hereby certify that I have on the <u>15th</u> day of <u>June 2005</u>, mailed a

copy of the "<u>Report and Recommendation</u>," in the foregoing cause, pursuant to Rule 77(Davenport),

Fed.R.Civ.P., to the following:

Honorable Robert H. Cleland
United States District Judge
231 W. Lafayette, Room 707
Detroit, Michigan 48226

Janet L. Parker
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708

Richard M. Amsbaugh
40400 East Ann Arbor Road
Suite 201
Plymouth, Michigan 48170-4590

Social Security Administration
Office of the Regional Counsel
200 W. Adams Street, 30th Floor
Chicago, Illinois 60606

Marsha Heinonen
Deputy Clerk